IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| A.P. MOLLER - MAERSK A/S trading as MAERSK LINE, | ) ) ) | |
| Plaintiff, | ) ) | Civil Case No. 08-820-KI |
| vs. | ) ) | OPINION AND ORDER |
| TAIWAN GLASS USA SALES CORP., | ) ) ) | |
| Defendant. | ) | |

William D. De Voe
Holmes Weddle & Barcott
999 Third Avenue, Suite 2600
Seattle, Washington  98104

    Attorney for Plaintiff

C. Ken Roberts
Hamilton H. Emery
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 SW 5th Avenue, Suite 1900
Portland, Oregon  97204

    Attorneys for Defendant

Page 1 - OPINION AND ORDER

KING, Judge:

This is an action in admiralty for ocean-related freight charges. Plaintiff A.P. Moller-Maersk A/S ("Maersk") transported 60 containers from China and Taiwan to the United States and Canada. The containers were loaded with glass products sold by defendant Taiwan Glass USA Sales Corp. ("Taiwan Glass"). Maersk alleges that Taiwan Glass owes $151,850 for the overdue charges, known as detention, when the containers were not returned to Maersk within the allowed free time as provided in Maersk's tariff. Before the court is Maersk's Motion for Summary Judgment for Detention Charges, Attorney Fees and Costs (#20). For the reasons below, I grant summary judgment that Taiwan Glass is bound by the detention charges as outlined in the tariff. I further hold that there is a factual issue on whether Maersk mitigated its damages, requiring the amount of damages to be determined at trial.

## FACTS

Taiwan Glass, which is wholly owned by Taiwan Glass Industries Corp. ("TGIC"), receives sales orders from customers in the United States and Canada. It has a small office with four employees in Wilsonville, Oregon. Taiwan Glass only sells glass manufactured by sister companies owned by TGIC and has no facilities to receive cargo. Albert Wang is the General Manager for Taiwan Glass.

At issue in this action are 60 containers Maersk transported. The containers were shipped from Taiwan Glass's sister company's manufacturing facilities in either mainland China or the island of Taiwan.

The bills of lading name Taiwan Glass as the consignee and the manufacturer as the shipper. TGIC owns all of the shippers. TGIC wanted Taiwan Glass to be named as the

consignee on the bills of lading. Taiwan Glass knew it was named as the consignee and did not object.

Maersk faxes or emails the front of the bills of lading to Taiwan Glass. Two employees of Taiwan Glass review the documents and then forward them to the customs broker. No one at Taiwan Glass reviewed the terms on the back side of the bills of lading or the terms in Maersk's tariff. Wang testified that he did not pay attention to whether the shipments would be governed by the back side of the bills of lading.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

I.    Obligation to Pay Detention Arising from Contract

Maersk argues that Taiwan Glass has a contractual obligation to pay detention because Taiwan Glass knew it was named as the consignee on the bills of lading but did not object. Maersk interprets the bills of lading and tariff to provide that a consignee, as a party meeting the definition of a Merchant, is liable for detention. According to Maersk, Taiwan Glass is obligated to pay detention under the terms of the bills of lading, even though none of the containers were

Page 3 - OPINION AND ORDER

unpacked at Taiwan Glass's premises, because multiple entities that meet the definition of a Merchant are jointly and severally liable for detention charges. Maersk notes that Taiwan Glass's customers are never identified anywhere on the bills of lading.

Taiwan Glass claims that the broad Merchant definition is limited by the bill of lading provision related to detention so that the Merchant definition only applies to Merchants who possess or receive the containers. Taiwan Glass argues that the only party liable for detention is the party who unpacks the container and has control of whether detention is incurred. According to Taiwan Glass, it neither accepted nor saw a single container and had no role in the delivery of the cargo after the broker confirmed delivery of the shipping documents.

A shipper, and not the consignee, is primarily liable to the carrier for freight charges. States Marine Int'l, Inc. v. Seattle-First Nat'l Bank, 524 F.2d 245, 247 (9th Cir. 1975). A consignee can become liable under a statutory or contractual obligation. Id. at 247-48. Maersk does not rely on a statute. A consignee's contractual liability is based on the bill of lading, which serves as a receipt and a contract. Id. at 248.

The front of the bills of lading state: "such carriage being always subject to the terms, rights, defences, provisions, conditions, exceptions, limitations, and liberties hereof (INCLUDING ALL THOSE TERMS AND CONDITIONS ON THE REVERSE HEREOF NUMBERED 1-26 AND THOSE TERMS AND CONDITIONS CONTAINED IN THE CARRIER'S APPLICABLE TARIFF)." Tyo Decl. Ex. 3 at 1.

The back of the bills of lading state:

> "Merchant" includes the Shipper, Holder, Consignee, Receiver of the Goods, any Person owning or entitled to the possession of the goods or of this bill of lading and anyone acting on behalf of such Person.
>
> . . . .

Page 4 - OPINION AND ORDER

2.  CARRIER'S TARIFF

>The terms and conditions of the Carrier's applicable Tariff are incorporated herein.  Attention is drawn to the terms therein relating to free storage time and to container and vehicle demurrage or detention.  Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request.  In the case of inconsistency between this bill of lading and the applicable Tariff, this bill of lading shall prevail.
>
>. . . .
>
>15.4  If Containers supplied by or on behalf of the Carrier are unpacked at the Merchant's premises, the Merchant is responsible for returning the empty Containers, with interiors clean, odour free and in the same condition as received, to the point or place designated by the Carrier, within the time prescribed.  Should a Container not be returned in the condition required and/or within the time prescribed in the Tariff, the Merchant shall be liable for any detention, loss or expense incurred as a result thereof.

Id. Ex. 4 at 1.

Maersk's tariff spells out the rules for free time and detention charges.  Maersk-Sealand U.S. Governing Rules Tariff (MAEU-151), Id. Ex. 5.  Maersk sent its clients a Client Advisory on North America Demurrage, Detention and Per Diem Changes dated April 1, 2005 and effective May 1, 2005.  The Client Advisory explains the changes Maersk was implementing to improve the flow of equipment.  The Client Advisory also refers clients to Maersk's governing tariff MAEU-151 for a full description and gives the internet address where the tariff can be found.  Taiwan Glass states that it never received a copy of Maersk's Uniform Intermodal Interchange & Facilities Access Agreement, Maersk's North American Per diem Charges, or Maersk's North American Demurrage, Detention, and Per Diem Changes.

In interpreting the bills of lading, I am not persuaded by Taiwan Glass's argument that the only party liable for detention is the party who unpacks the container and has control of whether detention is incurred.  Taiwan Glass is expressly named as the consignee on the front of the bills

Page 5 - OPINION AND ORDER

of lading. As consignee, Taiwan Glass falls within the definition of Merchant on the back of the bills of lading. Because Taiwan Glass did not unpack containers at its premises, the first sentence of Section 15.4 on the back of the bills of lading does not apply to the situation. The second sentence of Section 15.4 does apply, however: "Should a Container not be returned in the condition required and/or within the time prescribed in the Tariff, the Merchant shall be liable for any detention, loss or expense incurred as a result thereof." Id. Ex. 4 at 1. As one of the entities defined to be the Merchant, Taiwan Glass is thus liable for the detention charge. This is true even though Taiwan Glass had no control over whether the container was returned within the free time. Moreover, these provisions are clear and not ambiguous.

Alternatively, Taiwan Glass argues that Maersk never treated Taiwan Glass as if it was a party to the shipping contract. Taiwan Glass claims that it never received a copy of the back side of the bills of lading, on which the terms at issue are stated. Thus, it contends that there is a fact question on whether it accepted the terms.

Maersk claims that the front of the bills of lading put Taiwan Glass on notice that the carriage was subject to the terms on the back side of the bills of lading and in the tariff. Maersk argues that Taiwan Glass should have obtained copies of the additional documents from its sister or parent company.

There is no dispute that Taiwan Glass knew it was named as consignee on the front of the bills of lading and it did not object. The front of the bills of lading also clearly states that there are additional terms on the back of the document and in the tariff. Taiwan Glass did not make any attempt to review the additional terms.

Like other contracts, a bill of lading requires some form of acceptance. All Pacific Trading, Inc. v. Vessel M/V Hanjin Yosu, 7 F.3d 1427, 1432 (9th Cir. 1993) (filing suit based on

Page 6 - OPINION AND ORDER

the bill of lading constituted acceptance of its terms), cert. denied, 510 U.S. 1194 (1994). There are no factual issues concerning Taiwan Glass's acceptance of the bills of lading. Company employees reviewed and acted upon each one. The cases which analyze whether a party has accepted a bill of lading usually concern a party that is not expressly named on the document. See id. at 1429 (shipper plaintiff not named on bill of lading because it used non-vessel-operating common carriers as intermediaries between itself and the operator of the vessel that carried the goods).

The next issue is whether the terms on the back of the bills of lading and in the tariff are part of the contract between Maersk and Taiwan Glass. I conclude that they are.

In other contexts, a party to a contract is bound by all terms, even if the party is unaware of them, unless there are special circumstances making it difficult to determine the terms. "[I]n the absence of special circumstances an insured is bound by the terms of an insurance policy purchased by him even though he is unaware of those terms because he has failed to read the policy, or having read the policy misunderstands it." Kabban v. Mackin, 104 Or. App. 422, 428, 801 P.2d 883 (1990) (insured not bound by policy exclusion because it was contained in a single sentence, two lines long, on page 20 of a 35-page policy and insurance agent knew exclusion would cause a problem but did not mention it to the insured); Union Oil Co. of California v. Lull, 220 Or. 412, 419-20, 349 P.2d 243 (1960) (when the terms are stated on the back of a gasoline credit card, a "person is not bound by the terms of a written agreement if he has no knowledge of such terms and if, because of the manner in which they are embodied in the instrument, a reasonable person would not be led to suspect that the terms were a part of the contract").

There are no such special circumstances here. The front of the bills of lading call out the existence of the additional terms. The front of this document is not densely filled with text.

Page 7 - OPINION AND ORDER

Most of the page has boxes filled with minimal information. The language referring to the additional terms is in the only paragraph of text on the page. Although the print is small, there is so little text that reading it would not be difficult. Taiwan Glass could have requested a copy of the back of the bill of lading. The tariff would also be readily available. See Yang Ming Marine v. Okamoto Freighters, Ltd., 259 F.3d 1086, 1089 (9th Cir. 2001) ("A tariff is a public document filed by the carrier and published by the Federal Maritime Commission letting shippers know what services a carrier will furnish under certain conditions and at what price."). Moreover, the shipper's knowledge of the tariff rate is conclusively presumed. Sea-Land Service v. Murrey & Son's Co. Inc., 824 F.2d 740, 742 (9th Cir. 1987).

Accordingly, Taiwan Glass is bound by the definitions on the back of the bills of lading and the detention charges as outlined in the tariff.

II.     Amount of Detention Owed

Taiwan Glass argues that Maersk's alleged damages of $151,850 are unreasonable because Maersk has provided no evidence of actual damage in the form of lost profits or otherwise. According to Taiwan Glass, many containers shipped from the Far East to the United States return empty or are chopped up as scrap because of shipping patterns. Taiwan Glass claims that Maersk could have purchased a used container for $1,500. Based on these practicalities, Taiwan Glass claims that Maersk should not be allowed to blindly apply the tariff rates because they amount to unreasonable liquidated damages when the detention charge for one of the containers at issue is $39,000. Taiwan Glass also maintains that it was unreasonable for Maersk to lie in wait and not contact Taiwan Glass while the detention charges mounted.

Maersk argues simply that the law requires it to charge the detention rate in the tariff and no more or less. Maersk distinguishes the cases on which Taiwan Glass relies, claiming that they

Page 8 - OPINION AND ORDER

are not cargo carriage freight collection cases governed by the requirement to collect the tariff rate.

    A.    <u>Tariff Rate or Actual Loss</u>

Maersk argues that the court should apply the Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998, which states in part:

> A common carrier, either alone or in conjunction with any other person, directly or indirectly, may not –
>
> (1) allow a person to obtain transportation for property at less than the rates or charges established by the carrier in its tariff or service contract by means of false billing, false classification, false weighing, false measurement, or any other unjust or unfair device or means; . . . .

46 U.S.C. § 41104. Common carriers provide water transportation of passengers or cargo between the United States and a foreign country for compensation. <u>Id.</u> § 40102(6).

Several of the cases cited by Taiwan Glass do not apply to the situation. Some cases concern demurrage for the loss of use of a vessel damaged in an accident and do not mention a tariff at all. <u>See, e.g.</u>, <u>Aktieselskapet Bonheur v. San Francisco & P.S.S. Co. The Beaver</u>, 287 F. 679 (9th Cir. 1923). Other cited cases concern dock tariffs, instead of tariffs filed by common carriers, so § 41104 would not apply. <u>See, e.g.</u>, <u>Farmers Export Company v. M/V Goergis Prois</u>, 799 F.2d 159 (5th Cir. 1986).

Two cases address the issue before me. In the first, <u>Yang Ming Marine</u>, 259 F.3d 1086, Yang Ming, the carrier, sought demurrage under its tariff when containers were abandoned at Yang Ming's container yard after the consignee discovered that the containers held worthless used tires rather than cigarettes. <u>Id.</u> at 1088-90. The court held that Yang Ming was entitled to demurrage under its tariff for the period from when the demurrage charges began to run until the date the cargo was abandoned. <u>Id.</u> at 1093. The court reasoned that Yang Ming was expressly

Page 9 - OPINION AND ORDER

prohibited by statute from charging demurrage rates greater or less than the rates listed in its tariff, regardless of the actual loss. Id.

The second case is Trans-Asiatic Oil Ltd., S.A. v. Apex Oil Company, 804 F.2d 773 (1st Cir. 1986), in which the court held that a vessel owner was not entitled to demurrage under the bill of lading or voyage charter agreement because the owner suffered no actual damages. The voyage at issue was the last voyage taken by the vessel before it was sold. Id. at 782. Yang Ming Marine distinguished Trans-Asiatic because Yang Ming sought demurrage for storing the containers at the terminal premises and not for the lost use of a vessel. The court reasoned that Yang Ming suffered indirect costs such as rent, amortization, taxes, and protection of the containers and thus did not have to prove lost profits to recover. Id. at 1094. Some of these indirect costs, such as amortization, would also apply to the containers at issue before me. Additionally, Trans-Asiatic does not address the tariff argument based on § 41104.

For these reasons, I will apply Yang Ming Marine and conclude that Maersk does not have to prove actual damage to recover the detention rate listed in its tariff.

B.  Mitigation

That does not end the analysis, however. Yang Ming Marine also addresses whether Yang Ming failed to mitigate its damages by not electing to dispose of the tires in Japan for $25,000. The court does not limit the mitigation analysis to damages calculated under the bill of lading, as opposed to demurrage under the tariff, so I will also address mitigation here.

A nonbreaching party to a contract has a duty to take reasonable steps to mitigate its damages, which might include making reasonable expenditures toward avoiding further damage. Yang Ming Marine, 259 F.3d at 1095. "[A] party may be required to make expenditures . . . [if] the expenditures are small in comparison to the possible losses . . . . Damages will not be

Page 10 - OPINION AND ORDER

decreased if it is only shown that a substantial expenditure would have minimized the total loss . . . ." Id. (emphasis omitted) (internal quotation omitted). The court held that Yang Ming acted reasonably in shipping the tires to Hong Kong rather than paying $25,000 to dispose of the tires in Japan. Id. at 1095. The district court originally calculated damages at $67,385.63. Id. at 1091.

Taiwan Glass argues that Maersk could have purchased used containers at $1,500 each, for a total of $90,000 for the 60 containers. That is a substantial expenditure in light of the $151,850 sought in detention. No factfinder could find that Maersk had a duty to purchase replacement containers.

Taiwan Glass also contends that Maersk should have just contacted Taiwan Glass when containers were late being returned, instead of waiting months in some cases while detention charges accumulated. I conclude that Maersk's failure to contact Taiwan Glass raises a factual issue on whether Maersk could have mitigated its damages. I will resolve that issue at trial because I cannot determine the amount of detention on the current record.

IV.     Interest, Attorney Fees, and Costs

Maersk also seeks leave to prove its right to interest, attorney fees, and costs based on a provision on the back of the bills of lading which states:

> 16.6  If the Merchant fails to pay the Freight when due he shall be liable also for payment of service fee or interest due on any outstanding sum, reasonable attorney fees and expenses incurred in collecting any sums due to the Carrier. Payment of Freight and charges to a freight forwarder, broker or anyone other than the Carrier or its authorised agent, shall not be deemed payment to the Carrier and shall be made at the Merchant's sole risk.

Tyo Dec. Ex. 4 at 1.

Page 11 - OPINION AND ORDER

I will address this issue pursuant to Federal Rule of Civil Procedure 54 after judgment is entered.

## CONCLUSION

Maersk's Motion for Summary Judgment for Detention Charges, Attorney Fees and Costs (#20) is granted in part.

IT IS SO ORDERED.

Dated this \_\_\_\_\_30th_____ day of September, 2009.

                                          /s/ Garr M. King
                                          Garr M. King
                                          United States District Judge